**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LUXOTTICA GROUP S.p.A., OAKLEY, INC., and COSTA DEL MAR, INC., | Case No. 21-cv-05458 |
| Plaintiffs, | |
| v. | |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | |
| Defendants. | |

## COMPLAINT

Plaintiffs Luxottica Group S.p.A., Oakley, Inc., and Costa Del Mar, Inc. (collectively, "Plaintiffs") hereby bring the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces and Domain Names.

Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiffs' federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Illinois.

## II. INTRODUCTION

3.     This action has been filed by Plaintiffs to combat e-commerce store operators who trade upon Plaintiffs' reputations and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including eyewear, using infringing and counterfeit versions of Plaintiffs' federally registered trademarks (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiffs are forced to file this action to combat Defendants' counterfeiting of their registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Plaintiffs have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks as a result of Defendants' actions and seek injunctive and monetary relief.

## III. THE PARTIES

**Plaintiffs**

4.        Plaintiff Luxottica Group S.p.A. is a subsidiary of EssilorLuxottica (collectively, "Luxottica"). Plaintiffs Oakley, Inc. and Costa Del Mar, Inc. are subsidiaries of Luxottica. Plaintiff Luxottica Group S.p.A. is a corporation duly organized under the laws of Italy with its principal place of business in Milan, Italy and an office located at 4000 Luxottica Place, Mason, Ohio 45040-8114.  Plaintiff Oakley, Inc. is a corporation organized and existing under the laws of the State of Washington, having its principal place of business at One Icon, Foothill Ranch, California 92610.  Plaintiff Costa Del Mar, Inc. is a corporation duly organized under the laws of Florida with its principal place of business in Daytona Beach, Florida and an office located at 2361 Mason Avenue, Suite 100, Daytona Beach, Florida, 32117-5166.

5.        Plaintiffs are engaged in the business of producing, manufacturing and distributing throughout the world, including within this judicial district, premium, luxury and sports eyewear products under federally registered trademarks, including, but not limited to, the RAY-BAN, OAKLEY, and COSTA trademarks.

6.        For generations, Plaintiffs' brands have been the undisputed world leaders in the field of sun and prescription eyewear products, including those which prominently display the famous, internationally recognized, and federally registered RAY-BAN, OAKLEY, and COSTA trademarks (collectively, "Plaintiffs' Products").

7.        Plaintiffs' Products have become enormously popular and even iconic, driven by the brand's arduous quality standards and innovative design. Among the purchasing public, genuine Plaintiffs' Products are instantly recognizable as such. In the United States and around the world, Plaintiffs' brands have come to symbolize high quality, and Plaintiffs' Products are among the most recognizable eyewear in the world. Plaintiffs' Products are distributed and sold

to consumers through retailers throughout the United States, including through authorized retailers in Illinois such as Sunglass Hut, Oakley O Stores, high-end department stores, and through the official websites at ray-ban.com, oakley.com, and costadelmar.com.

8.    Plaintiffs incorporate a variety of distinctive marks in the design of the various Plaintiffs' Products. As a result of long-standing use, Plaintiffs own common law trademark rights in the Plaintiffs' Trademarks. Plaintiffs have also registered several of the trademarks with the United States Patent and Trademark Office. Plaintiffs' Products often include at least one of Plaintiffs' registered trademarks. Plaintiffs use their trademarks in connection with the marketing of Plaintiffs' Products, including the following registered marks, collectively referred to as "Plaintiffs' Trademarks."

| Registration Number | Trademark | Goods and Services |
| --- | --- | --- |
| 1,080,886 | RAY-BAN | For: Ophthalmic products and accessories-namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, and spectacles in class 9. |
| 2,718,485 | RAY-BAN | For: Goods made of leather and imitation leather, namely, wallets, card cases for business cards, calling cards, name cards and credit cards in class 18.<br><br>For: Clothing for men and women, namely, polo shirts; headgear, namely, berets and caps in class 25. |
| 595,513 | WAYFARER | For: Sun glasses in class 9. |
| 1,537,974 | CLUBMASTER | For: Sunglasses in class 9. |
| 650,499 | Ray·Ban | For: Sun glasses, shooting glasses, and ophthalmic lenses in class 9. |

| | | |
|---|---|---|
| 1,093,658 |  | For: Ophthalmic products and accessories-namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, spectacles; and cases and other protective covers for sunglasses, eyeglasses, and spectacles in class 9. |
| 1,726,955 |  | For: Bags; namely, tote, duffle and all purpose sports bags in class 18.<br><br>For: Cloths for cleaning opthalmic products in class 21.<br><br>For: Clothing and headgear; namely, hats in class 25. |
| 1,320,460 |  | For: Sunglasses and carrying cases therefor in class 9. |
| 3,522,603 |  | For: Sunglasses, eyeglasses, lenses for eyeglasses, eyeglasses frames, and cases for eyeglasses in class 9. |
| 1,521,599 | OAKLEY | For: Sunglasses and accessories for sunglasses, namely, replacement lenses, ear stems and nose pieces in class 9. |
| 1,522,692 | OAKLEY | For: Clothing, namely, shirts and hats in class 25. |
| 1,552,583 | OAKLEY | For: Goggles in class 9. |

| | | |
|---|---|---|
| 2,293,046 | OAKLEY | For: Clothing, headwear and footwear and footwear, namely, sport shirts, jerseys, shirts, jackets, vests, sweatshirts, pullovers, coats, ski pants, headwear, caps, shoes, athletic footwear, all purpose sports footwear and socks in class 25. |
| 3,153,943 | OAKLEY | For: Prescription eyewear, namely, sunglasses and spectacles; eyewear containing electronics devices, namely, protective eyewear, eyeglasses, sunglasses and spectacles; electronics, namely portable digital electronic devices for recording, organizing, and reviewing text, data and audio files; computer software for use in recording, organizing, and reviewing text, data and audio files on portable digital electronic devices; transmitters, receivers, speakers and parts thereof for use with cellular, wireless computer and telephone communication systems; communication devices for use on eyewear, namely earpieces, transmitters, receivers, speakers and parts thereof for use with cellular, wireless computer and telephone communication systems; wearable audio visual display, namely, protective eyewear, eyeglasses, sunglasses and spectacles containing an audio visual display; wireless telecommunications modules in class 9. |

| | | |
|---|---|---|
| 3,771,517 | OAKLEY | For: Retail store services and on-line retail store services featuring eyewear, replacement lenses, eyewear nosepiece kits, clothing, headwear, footwear, watches, decals, electronics devices, posters, athletic bags, handbags, backpacks and luggage in class 35. |
| 1,980,039 | OAKLEY | For: Protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories in class 9. |
| 1,356,297 | OAKLEY | For: Goggles, sunglasses, and protective pads for elbows, feet and knees in class 9. For: Clothing - namely t-shirts; gloves; racing pants; hats; sweatshirts; sport shirts, jackets, jeans, jerseys and ski pants, jackets, hats, gloves and socks in class 25. |
| 1,519,596 | OAKLEY | For: Sunglasses and accessories for sunglasses, namely, replacement lenses, ear stems and nose pieces in class 9. |
| 3,496,633 | | For: Clothing, namely, t-shirts, beach-wear, blouses, sports shirts, jerseys, swimwear, swimtrunks, shorts, underwear, shirts, pants, racing pants, ski and snowboard pants and jackets, jeans, vests, jackets, wetsuits, sweaters, pullovers, |

| | | |
|---|---|---|
| | | coats, sweatpants, headwear, namely, hats, caps, visors and footwear, namely, wetsuit booties, shoes, sandals, athletic footwear, all purpose sports footwear, thongs and boots in class 25. |
| 3,331,124 |  | For: Protective eyewear, namely spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories; and protective clothing, namely, racing pants in class 9.<br><br>For: Clothing, namely, t-shirts, beach-wear, blouses, sports shirts, jerseys, swimwear, swimtrunks, shorts, underwear, shirts, pants, ski and snowboard pants and jackets, jeans, vests, jackets, wetsuits, sweaters, pullovers, coats, sweatpants, headwear, namely, hats, caps, visors and footwear, namely wetsuit booties, shoes, sandals, athletic footwear, all purpose sports footwear, thongs and boots in class 25. |
| 3,151,994 |  | For: Protective eyewear, namely spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for |

| | | |
|---|---|---|
| | | spectacles and sunglasses and their parts and accessories in class 9. |
| 3,771,516 |  | For: Retail store services and on-line retail store services featuring eyewear, replacement lenses, eyewear nosepiece kits, clothing, headwear, footwear, watches, decals, electronics devices, posters, athletic bags, handbags, backpacks and luggage in class 35. |
| 2,300,245 |  | For: Clothing, namely, T-shirts, beachwear, blouses, sports shirts, jerseys, shorts, shirts, pants, racing pants, ski pants, vests, jackets, sweaters, pullovers, coats, sweatpants, sweatshirts, headwear, namely, hats, caps, and footwear, namely, shoes, athletic footwear, all purpose sports footwear in class 25. |
| 1,927,106 |  | For: Printed material, namely decals and stickers in class 16. |
| 1,984,501 |  | For: Protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories in class 9.<br><br>For: Clothing and headwear, namely T-shirts, sweatshirts, |

| | | |
|---|---|---|
| | | jackets, hats, and caps in class 25. |
| 5,109,790 |  | For: Gloves in class 25. |
| 4,407,750 | CROSSLINK | For: Eyewear, namely, sunglasses, sports goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specially adapted for eyewear and their parts and accessories in class 9. |
| 3,733,882 | IRIDIUM | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 4,827,569 | JAWBREAKER | For: Eyewear, namely, sunglasses, goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specifically adapted for eyewear and their parts and accessories in class 9. |

| | | |
|---|---|---|
| 4,407,749 | RADARLOCK | For: Eyewear, namely, sunglasses, sports goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specially adapted for eyewear and their parts and accessories in class 9. |
| 3,489,952 | OIL RIG | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 4,194,197 | FROGSKINS | For: Eyewear, namely sunglasses and accessories for sunglasses, namely, replacement lenses, ear stems and nose pieces in class 9. |
| 4,847,461 | FLAK | For: Eyewear, namely, sunglasses, goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specifically adapted for eyewear and their parts and accessories in class 9. |
| 3,379,110 | RADAR | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; |

| | | |
|---|---|---|
| | | cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 5,026,399 | LATCH | For: Eyewear, namely, sunglasses, goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specifically adapted for eyewear and their parts and accessories in class 9. |
| 4,822,664 | SI TOMBSTONE | For: Protective and anti-glare eyewear, namely, sunglasses, goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specifically adapted for protective and anti-glare eyewear in class 9. |
| 3,245,494 | GASCAN | For: Protective eyewear, namely spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 4,956,691 | TRIGGERMAN | For: Eyewear, namely, sunglasses in class 9. |

| | | |
|---|---|---|
| 3,680,975 | FIVES SQUARED | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 2,900,432 | VALVE | For: Protective eyewear, namely spectacles, prescription eyewear, namely, spectacles and sunglasses, anti-glare glasses and sunglasses and parts thereof, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses in class 9. |
| 3,941,018 | PATH | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 5,026,407 | JUPITER SQUARED | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |

| | | |
|---|---|---|
| 4,136,113 | BATWOLF | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, ear stems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 1,701,476 | M FRAME | For: Protective eyewear; namely, goggles, anti-glare glasses; sunglasses and their parts; namely, lenses, replacement lenses, frames, earstems and nose pieces; cases specially adapted for sunglasses and their parts in class 9. |
| 2,054,810 | STRAIGHT JACKET | For: Protective and/or anti-glare eyewear, namely, sunglasses, goggles, spectacles and their parts and accessories including replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories in class 9. |
| 3,379,109 | FLAK JACKET | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |

| | | |
|---|---|---|
| 4,756,605 | BADMAN | For: Eyewear, namely, sunglasses, goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specifically adapted for eyewear and their parts and accessories in class 9. |
| 4,618,566 | TINCAN | For: Eyewear, namely, sunglasses, goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specifically adapted for eyewear and their parts and accessories in class 9. |
| 2,106,614 | SQUARE WIRE | For: Protective and/or antiglare eyewear, namely, sunglasses, goggles, spectacles and their parts and accessories, namely, replacement lenses, earstems, frames, nose pieces, and foam strips; cases specially adapted for protective and/or antiglare eyewear and their parts and accessories in class 9. |
| 1,952,697 | JACKET | For: Protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear in class 9. |

| | | |
|---|---|---|
| 3,468,824 | HIJINX | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 2,087,464 | O FRAME | For: Protective eyewear, namely, goggles and replacement parts for goggles in class 9. |
| 2,087,466 | E FRAME | For: Protective eyewear, namely, goggles and replacement parts for goggles in class 9. |
| 3,126,622 | CROWBAR | For: Sporting goods, namely goggles and replacement parts for goggles for skiing, snowboarding and motocross in class 9. |
| 1,778,325 | HYBRID | For: Protective eyewear; namely, spectacles, goggles, antiglare glasses and sunglasses, and their parts and accessories; namely, replacement lenses, frames, earstems and nose pieces; cases specially adapted to hold spectacles and sunglasses and their parts and accessories in class 9. |
| 2,250,767 | ROMEO | For: Protective and/or anti-glare eyewear, namely, sunglasses, and spectacles in class 9. |

| | | |
|---|---|---|
| 5,636,292 | HOLBROOK | For: Eyewear, namely, sunglasses, goggles for sports, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specifically adapted for eyewear and their parts and accessories in class 9. |
| 2,393,107 |  | For: Protective eyewear, namely, spectacles, anti-glare glasses and sunglasses and parts thereof, namely frames and earstems in class 9. |
| 2,403,609 |  | For: Protective eyewear, namely, spectacles, anti-glare glasses, and sunglasses and parts thereof, namely, frames and earstems in class 9. |
| 2,388,070 | JULIET | For: protective and/or anti-glare eyewear, namely, sunglasses, spectacles, and their parts and accessories, namely, replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories in class 9. |
| 2,155,819 | X-METAL | For: protective and/or anti-glare eyewear, namely sunglasses, spectacles, goggles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; glasses specially adapted for protective and/or anti-glare eyewear, and their parts and accessories in class 9. |

| | | |
|---|---|---|
| 4,813,708 | PRIZM | For: Protective and/or anti-glare eyewear, namely, sunglasses, spectacles and their parts and accessories, namely, replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear, their parts and their accessories, namely, replacement lenses, earstems, frames, nose pieces and foam strips in class 9. |
| 3,857,379 | COSTA | For: sunglasses and sunglass frames in class 009. |
| 5,653,368 | COSTA | For: eyeglasses and related accessories, namely, eyeglass lenses, eyeglass cases in class 009. |
| 4,163,647 | COSTA | For: On-line retail store services featuring sunglasses and related accessories, namely, sunglass lenses, retention cords, and clothing, namely shirts and hats in class 035. |
| 3,773,612 | COSTAS | For: sunglasses and sunglass frames in class 009. |
| 1,723,449 | COSTA DEL MAR | For: sunglasses in class 009. |
| 3,002,972 | COSTA DEL MAR | For: clothing, namely, hats, shirts in class 025. |
| 5,729,388 | DEL MAR | For: eyewear, namely, sunglasses, sunglass frames, and sunglass lenses in class 009. |

| | | |
|---|---|---|
| 5,944,853 |  | For: eyewear cleaning solution in class 003.<br><br>For: eyeglass lanyards; waterproof dry cases for cell phones in class 009.<br><br>For: stickers, decals, bumper stickers, decorative decals for vehicle windows in class 016.<br><br>For: bottle openers; drinking glasses, namely, tumblers, insulated containers for beverages, heat-insulated containers for beverages, containers for hot beverages, containers for cold beverages, coffee and tea mugs; microfiber cloths for cleaning in class 021.<br><br>For: lanyards for holding keys in class 022.<br><br>For: neck gaiters; knit face masks; bandanas in class 025. |
| 4,520,088 |  | For: clothing, namely, shirts and hats in class 025. |
| 5,646,820 |  | For: eyeglasses and related accessories, namely, eyeglass lenses, eyeglass cases in class 009. |
| 3,273,228 |  | For: sunglasses, sunglass frames, sunglass lenses in class 009. |

| | | |
|---|---|---|
| 5,465,884 |  | For: backpacks, beach bags, tote bags, duffle bags in class 018. |
| 5,653,366 |  | For: eyeglasses and related accessories, namely, eyeglass lenses, eyeglass cases in class 009. |
| 3,273,229 |  | For: sunglasses, sunglass frames, sunglass lenses in class 009. |
| 3,420,371 | C-MATES | For: combination sunglasses and reading glasses in class 009. |
| 4,599,722 | C-WALL | For: sunglass lenses; sunglass lens coatings sold as an integral component of sunglasses in class 009. |
| 3,711,018 | COSTA 580 | For: sunglasses and sunglass frames, sunglass lenses in class 009. |
| 4,891,374 | 580 | For: sunglass lenses in class 009. |
| 4,771,385 | BEYOND POLARIZED | For: sunglasses, sunglass lenses in class 009. |
| 4,767,077 | BORN ON THE WATER | For: sunglasses, sunglass frames, sunglass lenses in class 009. |

| 4,767,076 | PROTECT OUT THERE | For: sunglasses, sunglass frames, sunglass lenses in class 009. |
|---|---|---|
| 3,274,581 | SEE WHAT'S OUT THERE | For: sunglasses, sunglass frames, sunglass lenses in class 009. |
| 5,446,112 | KICK PLASTIC | For: clothing made from recycled materials, namely, t-shirts in class 025.<br><br>For: providing a website featuring information about recycling in class 040.<br><br>For: providing a website featuring information about environmental conservation in class 042. |
| 4,768,671 | HIGHLINE | For: eyewear, namely, sunglasses, sunglass frames, and sunglass lenses in class 009. |
| 3,274,582 | FATHOM | For: sunglasses, sunglass frames, sunglass lenses in class 009. |
| 2,899,507 | LIGHTWAVE | For: optical and sunglass lenses in class 009. |
| 3,153,673 | SILENCER | For: sunglasses in class 009. |
| 3,729,798 | ZANE | For: sunglasses and sunglass frames in class 009. |
| 4,342,211 | BLACKFIN | For: sunglasses, sunglass frames, and sunglass lenses in class 009. |
| 3,270,766 | HAMMERHEAD | For: sunglasses, sunglass frames, sunglass lenses in class 009. |

| | | |
|---|---|---|
| 3,270,765 | HARPOON | For: sunglasses, sunglass frames, sunglass lenses in class 009. |
| 3,067,284 | HARDTOP | For: sunglasses and frames in class 009. |
| 2,312,428 | RHYNO-TUFF | For: sunglasses in class 009. |
| 2,306,527 | ANTI-OCULAR INTRUSION SYSTEM | For: sunglasses in class 009. |
| 3,837,688 | N | For: sunglasses and related accessories, namely, sunglasses cases, retention cords, replacement parts, and temple-bar release devices; sports goggles for snow sports and motorsports in class 009. |
| 3,837,682 |  | For: sunglasses and related accessories, namely, sunglasses cases, retention cords, replacement parts, and temple-bar release devices; sports goggles for snow sports and motorsports in class 009. |
| 3,581,846 | NATIVE | For: eyewear, namely, sports goggles for snow sports and motorsports in class 009. |
| 5,956,148 |  | For: sunglasses and related accessories, namely, sunglass lenses, sunglass cases and sunglass retention cords; sports goggles for snow sports in class 009.<br><br>For: online retail store services, featuring sunglasses and related accessories, namely, sunglass lenses, frames, nose pads, temple boots, and cases in class 035. |

| | | |
|---|---|---|
| 5,875,336 |  | For: hats and shirts in class 025. |
| 5,201,379 |  | For: goggles for ski sports; ski goggles; snow goggles in class 009. |
| 4,114,951 |  | For: sports eyewear and sunglasses in class 009. |
| 3,431,239 |  | For: eyewear, namely, sports eyewear and sunglasses in class 009. |
| 3,245,770 |  | For: sports eyewear and sunglasses in class 009. |

9.     The above U.S. registrations for Plaintiffs' Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for Plaintiffs' Trademarks constitute *prima facie* evidence of their validity and of Plaintiffs' exclusive right to use Plaintiffs' Trademarks pursuant to 15 U.S.C. § 1057 (b). True and correct copies of the United States Registration Certificates for the above-listed Plaintiffs' Trademarks are attached hereto as **Exhibit 1**.

10. Plaintiffs' Trademarks are distinctive when applied to Plaintiffs' Products, signifying to the purchaser that the products come from Plaintiffs' and are manufactured to Plaintiffs' quality standards. Whether Plaintiffs manufacture the products or contract with others to do so, Plaintiffs have ensured that products bearing Plaintiffs' Trademarks are manufactured to the highest quality standards.

11. Plaintiffs' Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. The innovative marketing and product designs of Plaintiffs' Products have enabled Plaintiffs' brands to achieve widespread recognition and fame and have made Plaintiffs' Trademarks some of the most well-known marks in the sun and prescription eyewear industry. The widespread fame, outstanding reputation, and significant goodwill associated with Plaintiffs' brands have made Plaintiffs' Trademarks valuable assets of Plaintiffs.

12. Plaintiffs have expended substantial time, money, and other resources in advertising and promoting Plaintiffs' Trademarks. In fact, Plaintiffs have expended millions of dollars annually in advertising, promoting and marketing featuring Plaintiffs' Trademarks. Plaintiffs' Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing Plaintiffs' Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiffs. Plaintiffs' Products have become among the most popular of their kind in the U.S. and the world. Plaintiffs' Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with Plaintiffs' Trademarks is of incalculable and inestimable value to Plaintiffs.

13.     Genuine Plaintiffs' Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with Plaintiffs' brands.

14.     For many years, Plaintiffs have operated websites at ray-ban.com, oakley.com, and costadelmar.com. Sales of Plaintiffs' Products via these websites are significant. The websites feature proprietary content, images and designs exclusive to Plaintiffs' brands.

**The Defendants**

15.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiffs. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

16.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiffs to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiffs will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

17.     The success of Plaintiffs' brands has resulted in their significant counterfeiting. Consequently, Plaintiffs have a worldwide anti-counterfeiting program and regularly investigate suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiffs have identified numerous fully interactive, e-commerce stores,

including those operating under the Seller Aliases, which were offering for sale and/or selling Counterfeit Products to consumers in this Judicial District and throughout the United States. E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 2**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id.* Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

18.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also*, report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020) attached as **Exhibit 4** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit**

**4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186-187.

19.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Products to residents of Illinois.

20.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiffs have not licensed or authorized Defendants to use any of Plaintiffs' Trademarks, and none of the Defendants are authorized retailers of genuine Plaintiffs' Products.

21.     Many Defendants also deceive unknowing consumers by using Plaintiffs' Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Plaintiffs' Products. Other e-commerce stores operating under the Seller Aliases omit using Plaintiffs' Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Plaintiffs' Products.

22.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

23.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products.  Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

24.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other seller aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that Defendants are interrelated.

25.     E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

26.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiffs' enforcement.  E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiffs.  Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

27.     Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiffs, have jointly and severally, knowingly and willfully used and continue to use Plaintiffs' Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

28.     Defendants' unauthorized use of Plaintiffs' Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

29.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

30.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Plaintiffs' Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. Plaintiffs' Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiffs' Products offered, sold or marketed under Plaintiffs' Trademarks.

31.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of Plaintiffs' Trademarks without Plaintiffs' permission.

32.     Plaintiffs are the exclusive owners of their respective Plaintiffs' Trademarks. Plaintiffs' United States Registrations for their respective Plaintiffs' Trademarks (Exhibit 1) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiffs' rights in Plaintiffs' Trademarks, and are willfully infringing and intentionally using counterfeits of Plaintiffs' Trademarks. Defendants' willful, intentional and unauthorized use of Plaintiffs' Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

33.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

34.     Plaintiffs have no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputations and the goodwill of Plaintiffs' Trademarks.

35.     The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

36.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

37.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs.

38.     By using Plaintiffs' Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

39.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

40.     Plaintiffs have no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputations and the associated goodwill of Plaintiffs' respective brands.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using Plaintiffs' Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing,

31

advertising, offering for sale, or sale of any product that is not a genuine Plaintiffs' Product or is not authorized by Plaintiffs to be sold in connection with Plaintiffs' Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiffs' Product or any other product produced by Plaintiffs, that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under Plaintiffs' Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

d. further infringing Plaintiffs' Trademarks and damaging Plaintiffs' goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any of Plaintiffs' trademarks, including the Plaintiffs' Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, at Plaintiffs' choosing, the registrant of the Domain Names shall be changed from the current registrant to Plaintiffs, and that the domain name registries for the Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Domain Names to a registrar of Plaintiffs' selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and

Namecheap, Inc. ("Namecheap"), shall take any steps necessary to transfer the Domain Names to a registrar account of Plaintiffs' selection; or that the same domain name registries shall disable the Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon Plaintiffs' request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using Plaintiffs' Trademarks;

4) That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiffs' Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Plaintiffs be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of Plaintiffs' Trademarks;

6) That Plaintiffs be awarded their reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this 14th day of October 2021.    Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Thomas J. Juettner
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law
tjjuettner@gbc.law

*Counsel for Plaintiffs Luxottica Group S.p.A.,*
*Oakley, Inc., and Costa Del Mar, Inc.*